No. 13-30797

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

| | |
|---|---|
| ROBIN N. COOLEY, | |
| Plaintiff-Appellee | Appeal from the United States District Court for the Eastern District of Louisiana, Civil Action No. 12-2376 |
| v. | |
| HOUSING AUTHORITY OF THE CITY OF SLIDELL, | |
| Defendant - Appellant | |

_____

**BRIEF FOR APPELLEE, ROBIN N. COOLEY**

_____

Counsel for Appellee:
SOUTHEAST LOUISIANA LEGAL SERVICES
DAVID H. WILLIAMS, Louisiana Bar No. 17867
1010 Common Street, Suite 1400A
New Orleans, LA 70112
Phone: (504) 529-1063

## Certificate of Interested Persons

No. 13-30797, Robin N. Cooley v. Housing Authority of the City of Slidell

*The undersigned counsel of record certifies that the following listed persons and entities as described in the fourth sentence of Rule 28.2.1 have an interest in the outcome of this case. These representations are made in order that the judges of this court may evaluate possible disqualification or recusal.*

## Parties

Robin N. Cooley, Plaintiff-Appellee

Housing Authority of the City of Slidell

## Counsel

David H. Williams, Southeast Louisiana Legal Services, Counsel for Robin Cooley. *The firm representing Ms. Cooley is not the "Southern Law Poverty Center" (sic) as set out in Appellant's Brief.*

Joanne Rinardo
Keith J. Bergeron
DEUTSCH, KERRIGAN & STILES, LLP
Counsel for Appellant, Housing Authority of the City of Slidell

## Insurer

The Slidell Housing Authority has a policy with National Union Fire Insurance Company that provides coverage in whole or in part with regard to the claims at issue.

/s/ David H. Williams
David H. Williams,
Attorney of record for Robin N. Cooley

i

## **Statement Regarding Oral Argument**

Appellant has waived oral argument.  Appellee agrees that oral argument is unnecessary, since the District Court's opinion can be readily affirmed for the reasons set out in this Brief.

# **Table of Contents**

Certificate of Interested Persons ...................................................................... i

Statement Regarding Oral Argument ............................................................. ii

Table of Contents .......................................................................................... iii

Table of Authorities ....................................................................................... v

Statement of the Case .................................................................................... 1

Statement of Facts ......................................................................................... 1

Summary of the Argument ............................................................................ 7

Argument ....................................................................................................... 8

      A.    The District Court correctly ruled that Ms. Cooley's termination
was arbitrary and capricious ...................................................................... 8

             Standard of review ......................................................................... 9

             1.    The Housing Authority decision was arbitrary and capricious for
failure to comply with its policy requiring the appointment notice be sent
120 days in advance of the anniversary date. .......................................... 10

             2.    Sending certified mail six days in advance of an appointment
does not reasonably assure receipt. ......................................................... 12

             3.    In these circumstances, there was no rational basis to require the
request to reschedule be made before the appointment. ........................... 13

             4.    It was arbitrary and capricious for the Housing Authority to
ignore the fact that the certified mail had not been received ................... 16

      B.    Ms. Cooley's reinstatement was appropriate on the alternative
ground that she was denied due process of law when terminated for missing
an appointment, notice of which was sent only by certified mail, and known
not to have been received by the time the Authority took action. ........... 17

      C.    The District Court properly ruled that the allegations concerning
overpaid assistance were not at issue, because they had not been discussed in
the informal hearing decision. ................................................................. 28

Conclusion ................................................................................................. 33

Certificate of Service ................................................................................ 35

Certificate of Compliance with Rule 32(A) .............................................. 35

# Table of Authorities

## Cases

*Armstrong v. Manzo,* 380 U.S. 545 (1965).                                    26

*Billington v. Underwood*, 613 F.2d 91, 94 (5th Cir. 1980)                   30

*Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576               18
(1972)

*Boykins v. Cmty. Dev. Corp. of Long Island*, 2011 WL 1059183                 32
*3-4 (E.D.N.Y. Mar. 21, 2011)

*Bueche v. Dep't of Health & Hospitals*, 822 So. 2d 25 (La.App.              10
1 Cir. 2002)

*Carpenter v. State, Dept. of Health and Hospitals*, 944 So.2d               10
604, 610, 612-14 (La.App. 1 Cir. 2006)

*Castellano v. Fragozo*  352 F.3d 939, 960 (5th Cir. 2003) *cert.*          18
*denied* 543 U.S. 31 (2004).

*Central Louisiana Electric Co. v. Louisiana Public Service*                  11
*Commission,* 377 So.2d 1188, 1194 (La.1979).

*Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996)                      32

*Costa v. Fall River Hous. Auth.*, 453 Mass. 614, 630 (Mass.                  32
2009)

*Davis v. Mansfield Metro. Hous. Auth.*, 751 F.2d 180, 184 (6th             19
Cir. 1984)

*Dickinson v. Auto Center Mfg. Co.,* 733 F.2d 1092, 1101 (5th               18
Cir. 1983)

*Driver v. Housing Authority of Racine County*, 289 Wis.2d 727,            31
739 (Wis. App. 2006)

*Dusenbery v. U.S.,* 534 U.S. 161 (2002)                                      23

*Echavarria v. Pitts*, 641 F.3d 92, 95 & n. 2 (5th Cir. 2011)     24

*Gaston v. CHAC, Inc.*, 872 N.E. 2d 38, 45-46 (Ill. App. Ct. 2007)     31

*Goldberg v. Kelly*, 397 U.S. 254 (1970)     19, 30, 31-32

*Greene v. Lindsey*, 456 U.S. 444 (1982)     24

*Holly v. Housing Authority of New Orleans*, 684 F. Supp. 1363, 1368 (E.D. La 1988)     28-29

*Jones v. Flowers*, 547 U.S. 220 (2006)     7-8, 12-13, 14, 17, 20-24, 26-27

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)     18

*Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–436 (1982)     25

*Lugo v. Dumpson*, 390 F. Supp. 379, 382 (S.D.N.Y. 1975).     13, 23

*Matter of Carline Tank Services, Inc.*, 627 So.2d 669, 670 (La.App. 1 Cir.,1993)     18

*McCall v. Montgomery Housing Authority*, 809 F.Supp.2d 1314, 1325 (M.D.Ala. 2011)     30-31

*Mulder v. Comm'r of Internal Revenue*, 855 F.2d 208, 212 (5th Cir. 1988)     21

*Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950)     20, 22, 23

*Multi-Care, Inc. v. State, Dept. of Health & Hospitals*, 804 So.2d 673, 675 (La.App. 1 Cir. 2001)     10

*Nader v. Allegheny Airlines*, 626 F.2d 1031, 1036 (D.C.Cir.1980)     28-29

*Parratt v. Taylor,* 451 U.S. 527 (1981)     24

*Peralta v. Heights Medical Center, Inc.*, 485 U.S. 80 (1988)     25, 26

*Perkins-Bey v. Hous. Auth. of St. Louis County*, 2011
WL939292 *4 (E.D. Mo. Mar. 14, 2011)     31

*Ramirez v. Housing Authority of the City of El Paso*, 158 F.3d     30
583, 1998 WL 648477 *5 (5th Cir. 1998)

*Ressler v. Pierce*, 692 F.2d 1212, 1215 (9th Cir. 1982)     19

*Ridgely v. Federal Emergency Management Agency*, 512 F.3d     18
727, 735 (5th Cir. 2008)

*Rios v. Town of Huntington Housing Authority*, 853 F.Supp.2d     19
330, 337 (E.D.N.Y. 2012)

*Robinson v. Hanrahan,* 409 U.S. 38 (1972)     23

*S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 598 -599 (5th Cir.     15
2004)

*Simmons v. Drew*, 716 F.2d 1160, 1162 (7th Cir. 1983)     19

*Swift v. McKeesport Housing Authority*, 726 F.Supp.2d 559, 574     19
(W.D. Pa. 2010)

*Tanner v. City of Baton Rouge,* 422 So.2d 1263, 1266 (La.App.     9
1 Cir. 1982), writ denied 429 So.2d 128 (La. 1983).

*Tulsa Professional Collection Services, Inc. v. Pope*, 485 U.S.     23-24
478 (1988)

*United States v. Hill*, 42 F.3d 914, 917 n. 8 (5th Cir. 1995)     18

*University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)     9-10

*Utah Construction & Mining Co.*, 384 U.S., 394, 422 (1966)     9-10

*War Eagle Village Apartments v. Plummer,* 775 N.W.2d 714     13, 23
(Iowa 2009).

*Washington-St. Tammany Elec. Co-op., Inc. v. Louisiana Public Service Commission,* 671 So.2d 908, 915 fn. 3 (La. 1996)    11-12

*Woods v. Willis*, 825 F.Supp.2d 893, 899 (N.D. Ohio 2011)    19

*Wooley v. State Farm Fire and Cas. Ins. Co.*, 893 So.2d 746, 771 (La. 2005)    10

*Young v. Maryville Housing Authority*, 2009 WL 2043891 *6 (E.D. Tenn. July 2, 2009)    31

*Zinermon v. Burch*, 494 U.S. 113, 136-138 (1990)    25

**Statutes**

28 U.S.C. § 1367    8, 9

42 U.S.C. § 1437f    1

42 U.S.C. § 1983    17, 18

42 U.S.C. § 1988(b)    17-18

La. R.S. 49:964(G)(6)    10

**Regulations**

24 C.F.R. § 882.216(b)(iv)(6)(v)    32

24 C.F.R. § 982.551    19

24 C.F.R. § 982.552                                           18-19

24 C.F.R. § 982.555(c)(2)(i)                                  30

24 C.F.R. § 982.555(e)(6)                                     31, 32

**Rules**

Fed. R. Civ. P. 54(b)                                          1

**U.S. Constitution**

14th Amendment                                              18

**Other Authorities**

49 Fed. Reg. 12,215, 12,230, 12,243 (Mar. 29, 1984)          32

HUD Housing Choice Voucher Program Guidebook (Apr.           5, 33
2001)

**Statement of the Case**

The parties' joint motion was not for an interlocutory appeal under Rule 54(b), as might be concluded from Appellant's Statement of the Case.  It was for a final judgment.  ROA 467-472.

The Final Judgment is not in the appellate record or Record Excerpts as compiled at this time.  The Record will presumably be corrected with the Final Judgment added at ROA 474-475.

Otherwise the Statement of the Case is essentially correct, except for its characterizations of the propriety of the events in the case.

**Statement of Facts**

**A.  Ms. Cooley's assistance was terminated because certified mail was sent only six days ahead and not received until after the appointment date**.

Robin Cooley was receiving rental assistance through the federal Housing Choice Voucher Program, commonly called "Section 8."[1]  Her annual re-examinations for the other two years she had received assistance through the Slidell Housing Authority had been in May.

But in 2012 the Slidell Housing Authority set her annual appointment in April, rather than May.  Not only did it advance the appointment.  It did not send notice of the April 17 appointment date out until, as shown by the postmark, six days before the appointment.[2]  So the soonest Ms. Cooley could have received

---

[1] The Housing Choice Voucher Program was established pursuant to Section 8 of the U.S. Housing Act of 1937, codified at 42 U.S.C. § 1437f.  As a result, it is often referred to as the "Section 8" program.

[2] ROA 372; ROA 189, the latter also set out at Rec. Exc. Tab 4, Exhibit X.

notice was five days before the appointment.

Ms. Cooley's mother had died March 29, 2012. After dismissal services on April 6 & 7, Ms. Cooley stayed in her mother's apartment in New Orleans to wrap up her mother's legal affairs, including the custody of two grandchildren.[3]

She returned six days after the first notice that she had certified mail to claim arrived. But the post office had already closed, so she went to the post office the next day, the 19th, to pick it up, and that day went to the Slidell Housing Authority. She returned to the Housing Authority again on the 20th, attempting to reschedule her annual reexamination interview, which had been set for the 17th.[4]

(The SHA Brief notes that SHA staff claimed in their notes that Ms. Cooley had not retrieved her mail because she does not always look at her mail. (Brief at 7.) The 4/16 log entry referred to also claimed that Ms. Cooley phoned in, something everyone agrees was not the case.[5] As explained in Ms. Cooley's affidavit, she was not invited into an office for these attempted conversations; they occurred in a public area.[6] Staff could easily have misremembered or misinterpreted the conversations by the time the attempted conversation was

---

[3] ROA 308-309, Cooley Affidavit, ¶¶ 8-10.

[4] The Housing Authority is correct that Ms. Cooley stated the date she returned and the date she went into the Housing Authority differently many times. But Ms. Cooley consistently stated that the post office was closed when she returned to Slidell, and that she went to both the post office and the Slidell Housing Authority the next day. With the aid of logs and a postal record that showed the date of the latter events, she was able to correct the dates at her deposition of all events. ROA 421-426; ROA 309 ¶¶ 11-13.

[5] ROA 152, Rec. Exc. Tab 4, Exh. I, p. 1.

[6] ROA 310-311, Cooley Affidavit, ¶¶ 19-21.

memorialized.)

The Slidell Housing Authority refused to reschedule the interview, and decided against her appeal of its termination of assistance.[7]  It was not until May 31, which was the date the assistance was to terminate,[8] that the Housing Authority checked whether Ms. Cooley had received the certified mail before the date of her April 17 appointment.[9]  The Housing Authority contends that checking earlier was unnecessary, because it accepted the fact that Ms. Cooley had not gotten notice. (Brief at 26.)

Ms. Cooley's worker has sworn that "it is SHA's policy that a participant who does not appear for his or her appointment and fails to call ahead to reschedule the appointment is notified that his or her housing assistance is terminated."[10]  In other words the but-for-factor causing the termination was the missed appointment.

## B.  Alleged mis-reporting of income.

Despite the sworn statement that the Housing Authority considers termination mandatory for missing an appointment, the Slidell Housing Authority now claims that it terminated Ms. Cooley not only because of the missed appointment, but also because of various times her income was not timely reported or budgeted.

---

[7] ROA 310-311, Cooley Affidavit, ¶¶ 19-25.
[8] ROA 203, Rec. Exc. Tab 4, Exh BB (referring in first line to the May 31 date).
[9] ROA 278, Plaintiff's Statement of Uncontested Material Facts, #26 (not contested: ROA 400); ROA 190-191.
[10] ROA 155; Rec. Exc. Tab 4 Exhibit J, p. 2.

The largest of the late-reporting claims concerns Ms. Cooley's Dillard's income which resumed in September 2009, and which Ms. Cooley admits she reported late, but by Christmas of that year.[11]  This issue has been known to the Slidell Housing Authority for years.  An affidavit in the Record Excerpts sets out that the issue was identified by the SHA in May 2010 and that earnings verification was requested that showed Ms. Cooley's wages began within days of beginning to receive assistance through the Slidell Housing Authority.[12]  That verification was received September 7, 2010, a year and a half before Ms. Cooley's proposed termination.[13]  But contrary to its policy, the Housing Authority has never acted on the overpayment by seeking to have Ms. Cooley enter a repayment agreement.[14]

The second overpayment alleged seems to relate to the fact that part of Ms. Cooley's post-Dillard's unemployment compensation was withheld for taxes.[15]  A Section 8 participant's rent share is based on 30% of their income.[16]  The $14 a week discrepancy in income over 6 months would have come to a total of $364 in income.  30% of this would be $109.20.  Putting aside the question of whether one would intentionally commit fraud to gain approximately $4 a week, the amount at

---

[11] ROA 312, Cooley Affidavit , ¶ 27.

[12] ROA 154; Rec. Exc. Tab 4 Exhibit J, p. 1, 3rd ¶.

[13] ROA 118 - 122.

[14] ROA 278, Plaintiff Statement of Uncontested Material Facts, #28 (not contested: ROA 401); ROA 376, Request for Admission # 11; ROA 379, Request for Production # 10; ROA 311-312, Affidavit of Robin Cooley, ¶¶ 26-29.

[15] ROA 279, Plaintiff Statement of Uncontested Material Facts, # 29 (not contested: ROA 401); ROA 312, Cooley Affidavit, ¶¶ 30-32; ROA 169-177 (unemployment compensation printouts, showing payment of $128 and withholding of $14 a week).

[16] ROA 106 ¶1B.

issue is small and would best be dealt with through repayment, if it can be established that it was due to Ms. Cooley's error.  (U.S. Department of Housing and Urban Development ("HUD") policy provides if the error is the Housing Authority's, the tenant is not responsible to repay.[17])  Ms. Cooley stated in an affidavit that she did not believe that her unemployment amount was budgeted based on an oral representation, but would have been based on a paper from the unemployment office or other forms of verification (many of which are electronic, between federally assisted agencies).[18]

The third claim made against Ms. Cooley concerns the fact that the Slidell Housing Authority made an error as to when Ms. Cooley's unemployment compensation would end.[19]  Nowhere does defendant's documentation state Ms. Cooley reported her unemployment benefits would end in August, 2011.  The Housing Authority worker made her own error in this regard.  SHA's counsel claims an error by Ms. Cooley in failing to correct the rent amount.[20]  As cited above, HUD provides that participants are not responsible to repay rent undercharged because of errors by the Housing Authority.

**C.  The termination notice and informal hearing and decision did not address any facts concerning alleged late reporting.**

---

[17] ROA 365, HUD Housing Choice Voucher Program Guidebook (Apr. 2001).

[18] ROA 312, Cooley Affidavit, ¶¶ 30-31.

[19] ROA 279, Plaintiff Statement of Uncontested Material Facts #30 (not contested: ROA 401); ROA 154-155, Rec. Exc. Tab 4, Exhibit J at 1-2; ROA 312, Cooley Affidavit, ¶¶ 31, 33.

[20] Defendant's Brief at 6 and 28, citing ROA 115, 152-156, 167-168.

Ms. Cooley's termination notice specified ***no facts*** about anything except the missed appointment.[21]  The notice did not state anything about late reporting, let alone facts about late reporting that would be at issue.  Ms. Cooley's termination letter merely stated her eligibility would be terminated for not attending her "scheduled re-certification appointment" and referred to "program violation."[22]

Anyone reading the notice would assume the program violation was her having missed the appointment, since the only facts in the termination notice concerned that the missed appointment.  Opposing counsel attempts to change the facts, by claiming that the notice also stated there were "(2) other program violations." (Brief at 8.)  This would not be legally sufficient notice of what those "other program violations" are.  But it also is not the literal language of the notice, which is set out at ROA 203 and as Exhibit BB under Defendant's Record Excerpts, Tab 4.  The actual language does not include the word "other" and on it "violation" is not pluralized.  The actual language is easily read as meaning that the missed the appointment is the "Program Violation."

Similarly, it was undisputed that no evidence of late reporting of income was presented at Ms. Cooley's hearing.[23]

The hearing decision affirming termination of Ms. Cooley's assistance only discusses her recertification appointment as a reason for termination.  There is no

---

[21] ROA 203; Rec. Exc. Tab 4, Exhibit BB.
[22] ROA 203; Rec. Exc. Tab 4, Exhibit BB.
[23] ROA 277, Plaintiff Statement of Uncontested Material Facts, #21 (not contested: ROA 400); ROA 376, Request for Admission # 10; ROA 311, Cooley Affidavit, ¶ 24.

mention of late reporting as a reason for termination, and there are no facts stated regarding late reporting. The only facts set forth in the decision concern the missed appointment. There is no reasoning and analysis of facts relating to late reporting. If the decision was one intending to terminate based on late reporting, it was fatally flawed for failing to refer to evidence supporting such a termination.

## Summary of the Argument

The government agency appealing the judgment against it set a mandatory appointment and sent notice of it only by certified mail, and knew that the notice had not been received by the time of the appointment. The agency nonetheless terminated Ms. Cooley's housing assistance for having missed the appointment, of which she had no notice. It refused to allow her to reschedule, though she was requesting to do so before the agency took adverse action and as soon as the agency knew that she had not received notice of the appointment.

Given the agency's short notice of the appointment, sent only by certified mail six days before the appointment date, given agency policy required that the notice be sent earlier, and its knowledge that Ms. Cooley had not received advance notice of her re-examination appointment it was arbitrary and capricious for the agency to refuse to reschedule and instead insist on terminating Ms. Cooley.

The termination of assistance also presents a denial of due process. The Supreme Court ruled in 2006 in *Jones v. Flowers*[24] that where an agency sends notice by certified mail, and the agency is aware that notice was ineffectual before

---

[24] 547 U.S. 220 (2006).

taking action, it must make additional reasonable attempts to give notice, or due process is denied. The District Court held the *Jones v. Flowers* case was limited to tax sales cases, a position already rejected by this Circuit. It also held that the lack of notice did not deny due process, since Ms. Cooley was allowed a hearing. But the hearing was ineffectual, given the agency's refusal to lift the consequence of Ms. Cooley's lack of notice. As a result, due process was still denied.

The Slidell Housing Authority claims Ms. Cooley's reinstatement is inappropriate because she received too much assistance on three occasions. But this issue was not presented in the termination notice, evidenced at the termination hearing, or discussed in the termination decision. As a result, it does not provide a valid basis to affirm the termination of assistance. Further, both U.S. Department of Housing and Urban Development and local policy provide that repayment should be sought from participants overpaid, even when an overpayment is the participant's fault. But SHA has never even requested repayment.

## Argument

### A. The District Court correctly ruled that Ms. Cooley's termination was arbitrary and capricious

Plaintiff's complaint asserted supplemental jurisdiction under 28 U.S.C. § 1367 over a state law claim that her termination from the program was arbitrary and capricious, which is an issue reviewable under state law.[25] The District Court found in plaintiff's favor on this claim, based on the Housing Authority's

---

[25] ROA 12, Complaint, ¶¶ 46-50.

insensitivity to Ms. Cooley's extenuating circumstances and her prompt action seeking to correct her having missed the appointment.[26]

### Standard of review

Because the § 1367 claim is based on state law, review is governed by Louisiana state law rather than federal law.

As stated in *Tanner v. City of Baton Rouge,* the applicable standard governing adjudicatory proceedings not covered by the state Administrative Procedure Act is that set forth in cases involving school boards, civil service boards, zoning boards, etc.[27]  The reviewing court, "[cannot] substitute its opinion for that of an administrative tribunal in the absence of a finding of an abuse of their administrative discretion by acting arbitrarily, capriciously, or in a discriminatory manner."[28]

While deference is appropriate, the Slidell Housing Authority's Brief refers to the "preclusive effects" of an administrative decision.  (Brief at 10.) But the U.S. Supreme Court has held that preclusion is judged in accordance with the state law of the tribunal at issue: "[W]hen a state agency "acting in a judicial capacity ... resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate,"…, federal courts must give the agency's *factfinding the same preclusive effect to which it would be entitled in the State's*

---

[26] ROA 455-457, Rec. Exc. Tab 3, pp. 11-13.

[27] 422 So.2d 1263, 1266 (La.App. 1 Cir. 1982), *writ denied* 429 So.2d 128 (La. 1983).

[28] *Id.*

*courts.*"[29]   Importantly, the state Supreme Court has held that Louisiana does not

accord res judicata effect to administrative decisions.[30] In addition, at least in

Administrative Procedure Act decisions, the reviewing court is given a freer hand

than under common law judicial review.  The reviewing court reviews using a

preponderance of evidence standard, rather than a substantial evidence standard.[31]

> **1. The Housing Authority decision was arbitrary and capricious for failure to comply with its policy requiring the appointment notice be sent 120 days in advance of the anniversary date.**

The policies of the Slidell Housing Authority specify that:

> The [Public Housing Authority] will maintain a re-examination system and ***at least one hundred twenty (120) days in advance of the scheduled annual reexamination effective date, the head of household will be notified by mail*** that she/he is required to attend an [sic] reexamination interview on a specified date (or rearrange in advance if the scheduled date is unacceptable)."[32]

---

[29] *University of Tennessee v. Elliott*, 478 U.S. 788, 799 (1986)(quoting *Utah Construction & Mining Co.*, 384 U.S., 394, 422 (1966)).

[30] *Wooley v. State Farm Fire and Cas. Ins. Co.*, 893 So.2d 746, 771 (La. 2005) (holding that res judicata applies only to judgments of judges or constitutionally recognized workers compensation Administrative Law Judges).

[31] La. R.S. 49:964(G)(6); *Carpenter v. State, Dept. of Health and Hospitals*, 944 So.2d 604, 610, 612-14 (La.App. 1 Cir. 2006)(approving District Court's reversal of ALJ credibility decision and finding agency decision an arbitrary and capricious over-extension of the written policies); *Bueche v. Dep't of Health & Hospitals*, 822 So. 2d 25 (La.App. 1 Cir. 2002)(Court of Appeal defers to the District Court on facts in APA proceeding); *Multi-Care, Inc. v. State, Dept. of Health & Hospitals*, 804 So.2d 673, 675 (La.App. 1 Cir. 2001) (deference runs to the District Court, not the agency).

[32] ROA 276, Plaintiff's Statement of Uncontested Material Facts #6 (not contested: ROA 400); ROA 186 at 8.a. (emphasis added).

Ms. Cooley's anniversary date ("annual reexamination effective date") was August 1.[33]  It is ***not*** August 26, even though SHA claims at page 4, n. 1, of its Brief that because the initial paperwork was signed August 26th, that became the deadline for completion of future recertifications.  No authority is cited for this assertion.  The date is instead determined by the lease.[34]  Ms. Cooley's leases began August 1 of each year.[35]

She was not yet at her mother's apartment, but was still going back and forth to her own apartment 120 days in advance of that date.[36]  As a result, Ms. Cooley did not receive notice of the appointment because of the Housing Authority's failure to adhere to its own policy, which required that it send the appointment notice April 3, rather than 8 days later on April 11.

An agency failure to adhere to its own policies is arbitrary and capricious under Louisiana jurisprudence.  In *Central Louisiana Electric Co. v. Louisiana Public Service Commission*[37]*,* the state Supreme Court held that "If a public agency is not required to abide by its own rules and procedures, then the standard of review for 'arbitrary and capricious' action is without meaning."  This principal was echoed in *Washington-St. Tammany Elec. Co-op., Inc. v. Louisiana Public*

---

[33] ROA 275, Plaintiff's Statement of Uncontested Material Facts, ## 1-4 (not contested: ROA 400).

[34] ROA 186 at 5.

[35] ROA 108 (listing initial lease term); ROA 313, Cooley Affidavit, ¶ 34; ROA 322 (listing 8/1/2011 "effective date"); ROA 323 (listing 8/1/2011 anniversary date).

[36] ROA 309, Cooley Affidavit, ¶ 10.

[37] 377 So.2d 1188, 1194 (La.1979).

*Service Commission*, holding the Public Service Commission failure to apply its own rule constitutes arbitrary and capricious action.  "[I]t is arbitrary and capricious for the Commission to fail to apply its own rules in an adjudication before it."[38]

## 2. Sending certified mail six days in advance of an appointment does not reasonably assure receipt.

Here, the Housing Authority advanced the re-examination appointment into April, though it had been held in May the other two years Ms. Cooley was receiving assistance through the Slidell Housing Authority.[39]  Though the re-examination letter is dated April 9,[40] and defendant's counsel refers to the letter as if sent on April 9 (Brief at 6), the postmark shows that the letter was not actually mailed until April 11.[41]  Thus, the earliest it could have been picked up, even under optimal circumstances, was five days ahead of the re-examination appointment.

As noted by the Supreme Court in 2006, using certified mail can delay notice, because the letter cannot be left like regular mail to be read when the recipient returns home.  Instead, it must be claimed at the post office during hours

---

[38] 671 So.2d 908, 915 fn. 3 (La. 1996).

[39] ROA 277, Plaintiff's Statement of Uncontested Material Facts # 18 (not contested: ROA 400); ROA 373, Request for Admission # 1; ROA 310, Cooley Affidavit, ¶¶ 15-16.

[40] ROA 188, Rec. Exc. Tab 4, Exh. W.

[41] ROA 276, Plaintiff's Statement of Uncontested Material Facts #9 (not contested: ROA 400); ROA 189, Rec. Exc. Tab 4, Exhibit X; ROA 372.

when the post office is open, and only for a specified period of time – after which it must be returned to the sender as "unclaimed."[42]

Sending such a letter to be received, at the earliest, only five days ahead fails to accommodate the possibilities of vacations, illness, hospitalizations, or work schedules that may prevent getting to the post office during open hours for days in a row.

As a result, one court has ruled that seven days notice by certified mail denied due process as not reasonably calculated to provide enough advance notice. In *War Eagle Village Apartments v. Plummer*,[43] the Iowa Supreme Court noted *Jones v. Flowers'* concerns about the delays involved in receiving certified mail. The court held that sending tenants notice of an eviction proceeding seven days before the proceeding, and only by certified mail but without any regard for whether the certified mail was picked up before the proceeding, was not reasonably calculated to provide adequate notice and so denied due process of law.  Similarly, a New York District Court has held that five days notice of the chance to appeal for a pretermination hearing was so short as to deny due process.[44]

### 3. **In these circumstances, there was no rational basis to require the request to reschedule be made before the appointment.**

SHA argues that Ms. Cooley's request for a rescheduled appointment did not have to be countenanced because it was not made in advance of her appointment.

---

[42] *Jones v. Flowers*, 547 U.S. 220, 234-35 (2006).
[43] 775 N.W.2d 714 (Iowa 2009).
[44] *Lugo v. Dumpson*, 390 F. Supp. 379, 382 (S.D.N.Y. 1975).

This, too, is arbitrary and capricious.  Those who are courtesied with advance notice also get the opportunity to reschedule their appointment if they contact the Housing Authority within three days of receiving the letter.  But Ms. Cooley is denied both advance notice and the chance to reschedule.  Those without notice are most at need of the opportunity to reschedule, yet denied it.

In its opening Brief SHA bases its argument that rescheduling must be requested in advance strictly on the text of the appointment letter and a hypothetical.  (Brief at 24-25.)  (The hypothetical is that if the right to reschedule were to run from receipt of the letter, participants could forever avoid their annual re-examination by never picking up their certified mail.  This situation is not before the court.  As the Supreme Court noted in *Jones v. Flowers,* a public agency desirous of giving notice would not ignore the fact that certified mail was not received, but would follow up with notice through other means.[45])

As to the argument that the text of the letter required calling before the appointment in order to reschedule, first, the letter does not say that and specifically runs the time to make the request from delivery of the letter.  It says Ms. Cooley must contact the Housing Authority worker "no later than three (3) days from the date of the delivery of this letter."[46]    It was undisputed that Ms. Cooley did contact the Housing Authority within three days of the delivery of the letter.

---

[45] 547 U.S. at 229-30.
[46] ROA 188, Rec. Exc. Tab 4, Exhibit W, penultimate paragraph.

Second, even if the letter clearly stated that the call must be in advance, as SHA maintains, it is just a letter. A letter does not garner special deference by the court.[47]

Third, Ms. Cooley did not receive the letter in time to act in advance of the appointment, and because the only notice used was certified mail, defendant had proof of that. So she is given no chance to reschedule, even though she is confirmed not to have had notice of the appointment.

SHA also cannot defend the refusal to reschedule based on its Administrative Plan, since, as noted above, the appointment letter was not sent to give notice 120 days ahead of the anniversary date, as required by the Administrative Plan. *See supra* at 11.

Is the refusal to reschedule rational because of the SHA claims a "waste of resources" occurred because of the missed appointment? Those resources would have been wasted if Ms. Cooley had received the letter and called in advance of the appointment as well. Given first notice of the certified mail was dropped off five days before the appointment, and that the letter gives three days to make the request for postponement, postponement could have been requested by the 15th (a Sunday), even if the letter had been received the first day possible. At that point it is too late to move someone else's appointment into the slot on the 17th, since appointments must be noticed in writing.[48] Further, as with a host of other kinds

---

[47] *S.D. ex rel. Dickson v. Hood*, 391 F.3d 581, 598 -599 (5th Cir. 2004)(refusing to defer to email from federal agency employee).

[48] ROA 187 at C.1 &3, Rec. Exc. Tab 4, Exhibit V, p. 2, at C.1 &3.

of work, a missed appointment should not lead to a solid slot of dead time.  One prepares for an appointment, but the result of that preparation remains available if the appointment is rescheduled.  Then if the person is a no show, one has other backlogged work to tend to during the time that the person may or may not show up.

Requiring that rescheduling occur in advance of the appointment is only reasonable if there is in turn a requirement that recipients be notified more than a few days ahead of the appointment.  Otherwise, the use of resources is essentially the same whether the request to reschedule occurs before or after the appointment.  The SHA has not evidenced otherwise.

The only treatment of Ms. Cooley that would not be arbitrary and capricious is that Ms. Cooley had until April 22, three days after the letter was actually delivered, to contact the worker to reschedule her appointment.

**4.  It was arbitrary and capricious for the Housing Authority to ignore the fact that the certified mail had not been received.**

It is repeatedly stated that the Slidell Housing Authority uses certified mail to reduce false claims of not having received notice of the re-examination appointment, which had caused it to reschedule appointments.[49]

But now the Housing Authority is faced with only verifiable claims of not having received the notice.  Isn't it arbitrary and capricious to switch to a method

---

[49] ROA 278, Plaintiff Statement of Uncontested Material Facts, #24 (not contested: ROA 400); ROA 79, Defendant's Statement of Uncontested Material Facts, # 27; ROA 200 Rec. Exc. Tab 4, Exhibit AA, Affidavit of Lorraine Cox, 4th ¶; Appellant's Brief at 33.

of notice to verify that claims of non-receipt are false, and then ignore the

verification provided?  The Supreme Court stated as much in *Jones v. Flowers*:

> Using certified mail provides the State with documentation of
> personal delivery and protection against false claims that notice
> was never received. That added security, however, comes at a
> price-the State also learns when notice has not been received.
> We conclude that, under the circumstances presented, the State
> cannot simply ignore that information…[50]

**B.  Ms. Cooley's reinstatement was appropriate on the alternative
ground that she was denied due process of law when terminated
for missing an appointment, notice of which was sent only by
certified mail, and known not to have been received by the time
the Authority took action.**

Ms. Cooley's suit alleged that she was denied due process of law when her

assistance was terminated based on missing an appointment the only notice of

which was sent by certified mail, and not received by the time of the

appointment.[51]  The claim was based on the Supreme Court's holding in *Jones v.

Flowers* and raised through a claim under the civil rights statute, 42 U.S.C. § 1983.

Because Ms. Cooley has not cross-appealed, she cannot request expanded

relief.  Nonetheless, her due process claim provides a valid alternative ground to

affirm the judgment reinstating Ms. Cooley's Section 8 assistance.  This Court can

affirm on alternative grounds if it will not expand the relief ordered below.  So it

cannot order attorney fees to Ms. Cooley as prevailing party under 42 U.S.C. §

---

[50] 547 U.S. at 237.
[51] ROA 11-12, ¶¶ 37-45.

1988(b).  But she "may urge any ground available in support of a judgment even if that ground was earlier and erroneously rejected by the trial court."[52]

As previously noted, Louisiana courts have found agencies' failure to adhere to their own policies to qualify as arbitrary and capricious.[53]  Louisiana courts have held review is available to reverse agency decisions, even in the absence of statutory authorization, when constitutional rights are at issue.[54]  As a result, there is little doubt that a denial of due process presents not only a claim under the civil rights statute, 42 U.S.C. § 1983, but also creates reason under Louisiana law to find a decision arbitrary or capricious.

The termination based on unreceived certified mail notice did deny due process. The Fourteenth Amendment Due Process Clause protects interests a person has acquired in protected property.[55]  To be protected, the interest must be one that can only be removed for cause.[56]

Housing Choice Voucher assistance qualifies as property since it can only be terminated only for cause.  24 C.F.R. § 982.552(b) requires the public housing

---

[52] *Castellano v. Fragozo* 352 F.3d 939, 960 (5th Cir. 2003) *cert. denied* 543 U.S. 31 (2004).  *See also United States v. Hill*, 42 F.3d 914, 917 n. 8 (5th Cir. 1995); *Dickinson v. Auto Center Mfg. Co.,* 733 F.2d 1092, 1101 (5th Cir. 1983).

[53] *See supra* at 12.

[54] *Matter of Carline Tank Services, Inc.*, 627 So.2d 669, 670 (La.App. 1 Cir.,1993).

[55] *Board of Regents of State Colleges v. Roth*, 408 U.S. 564, 576 (1972).

[56] "The hallmark of property… is an individual entitlement grounded in state law, which cannot be removed except 'for cause.'" *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 430 (1982)(citations omitted). While the quote refers to state law as creating the property interests, federal law can, too. *See, e.g. Ridgely v. Federal Emergency Management Agency*, 512 F.3d 727, 735 (5th Cir. 2008).

authority to remove a recipient from the program for certain kinds of criminal conduct and "serious" breaches of the lease. Section 998.552(c) sets out eleven clearly defined circumstances under which the PHA may, but need not, remove a beneficiary from the program. There is no language allowing termination on other grounds.[57]

The Courts of Appeals, in evaluating this for-cause termination scheme, have held in no uncertain terms that recipients of Section 8 rental assistance have a property interest in their continued receipt of the federal assistance.[58] Recent district court cases continue to reaffirm this principle.[59]

Though her re-examination appointment was not a court proceeding, Ms. Cooley's having missed it is being given by the Housing Authority the same finality as missing a court deadline: her failure to attend is ending her property interest.

---

[57] 24 C.F.R. § 982.551 complements this for-cause termination scheme by spelling out in greater detail the Housing Choice Voucher recipient's family obligations under the program.

[58] *Davis v. Mansfield Metro. Hous. Auth.*, 751 F.2d 180, 184 (6th Cir. 1984) (participation in Section 8 program is property interest protected by due process); *Simmons v. Drew*, 716 F.2d 1160, 1162 (7th Cir. 1983) (participation in rental assistance program is species of property protected by Fourteenth Amendment); *Ressler v. Pierce*, 692 F.2d 1212, 1215 (9th Cir. 1982) (applicants and potential applicants for HUD rental subsidies had property interest in Section 8 benefits).

[59] *See, e.g., Rios v. Town of Huntington Housing Authority*, 853 F.Supp.2d 330, 337 (E.D.N.Y. 2012) (program participant has a constitutionally protected property interest in her Section 8 benefits); *Woods v. Willis*, 825 F.Supp.2d 893, 899 (N.D. Ohio 2011) (participation in a Section 8 program is a property interest protected by due process under law); *Swift v. McKeesport Housing Authority*, 726 F.Supp.2d 559, 574 (W.D. Pa. 2010) (citing *Goldberg* for proposition that Section 8 voucher, like welfare benefits, is a property interest for purposes of due process).

Because action was needed to protect the property interest, due process requires notice. Adequate notice of pending action is one of the most important bulwarks against *arbitrary* government action. The Supreme Court has held that due process requires "notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."[60]

Where as here, certified mail was used to deliver notice, one cannot ignore the fact that the mail was not received in advance of the government's adverse action. In *Jones v. Flowers*, 547 U.S. 220 (2006), an individual's home was sold for unpaid state property taxes two years after a certified mailing had been returned to the sending agency unclaimed. The packet of information sent to the taxpayer by certified mail explained that unless he exercised his right to redeem the property, it would be subject to public sale two years later. No one on the premises was available to sign for the letter, and nobody appeared at the post office to retrieve the letter within the next 15 days.[61]

Notwithstanding that the sale took place two years after this certified mailing and after still another unclaimed certified mailing, the Supreme Court held that this deprivation of property failed to meet constitutional due process standards. The Court recognized that state agencies may have a legitimate interest in administrative efficiency. But where an individual has no notice of the steps he or

---

[60] *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); see also *Jones v. Flowers*, 547 U.S. 220, 223-24 (2006).

[61] *Jones v. Flowers*, 547 U.S. 220, 224 (2006).

she must complete to avoid a deprivation of property, something more than a single certified mailing, *known not to have reached the intended recipient*, is required.

Chief Justice Roberts' analysis is directly applicable to the present suit brought by Ms. Cooley:

> No one "desirous of actually informing" the [intended recipient] would simply shrug his shoulders as the letters disappeared and say "I tried." Failure to follow up would be unreasonable, despite the fact that the letters were reasonably calculated to reach their intended recipients when delivered to the postman. … By the same token, when a letter is returned by the post office, the sender will ordinarily attempt to resend it, if it is practicable to do so. … Although the State may have made a reasonable calculation of how to reach Jones, it had good reason to suspect when the notice was returned that Jones was "no better off than if the notice had never been sent." … Deciding to take no further action is not what someone "desirous of actually informing" Jones would do; such a person would take further reasonable steps if any were available.[62]

Presaging *Jones*, the Fifth Circuit had already held that when the government uses certified mail but does not have proof of delivery, additional efforts at notice are required.[63]

The Supreme Court's holding was explicit that it was not creating a

---

[62] 547 U.S. at 229-30 (internal citations omitted).

[63] *See, Mulder v. Comm'r of Internal Revenue*, 855 F.2d 208, 212 (5th Cir. 1988) ("While it is presumed that a properly-addressed piece of mail placed in the care of the Postal Service has been delivered, no such presumption of delivery exists for certified mail when the requested return receipt is not received by the sender.").

requirement that due process requires actual notice of all proceedings.[64]  Instead,

when a government *knows that notice has been ineffective before it takes adverse*

*action*, it is incumbent on it to take additional steps.[65]  Here the Housing Authority

states it knew its notice had been ineffective.  (Brief at 26.)  Thus, it had received

notice on April 19, which was before it issued the April 24 termination notice.[66]  It

also had the ability to check electronically on the delivery, which it eventually did

on May 31, the date the termination of Ms. Cooley's assistance was to be

effective.[67]

Further, the certified letter was sent only six days ahead of the appointment.

As stated in the classic Supreme Court notice case, *Mullane v. Central Hanover*

*Bank & Trust Co.*, "…notice must be of such nature as reasonably to convey the

required information, … and it must afford a reasonable time for those interested to

make their appearance…"[68]

As previously noted, the Supreme Court recognized in *Jones v. Flowers* that

use of certified mail delays receipt of notice, because unless the recipient is home

when the mail comes, a trip during post office open hours is needed to the to claim

---

[64] *See Jones v. Flowers,* 547 U.S. 220, 226 (U.S. 2006)("Due process does not require that a property owner receive actual notice before the government may take his property.")

[65] *See Jones v. Flowers,* 547 U.S. 220, 227 (U.S. 2006)(" But we have never addressed whether due process entails further responsibility when the government becomes aware prior to the taking that its attempt at notice has failed.")

[66] ROA 203, Rec. Exc. Tab 4, Exh BB.

[67] ROA 278, Plaintiff's Statement of Uncontested Material Facts, #26 (not contested: ROA 400); ROA 190-191; ROA 203, Rec. Exc. Tab 4, Exh BB (referring in first line to the May 31 date).

[68] 339 U.S. 306, 314 (1950)(internal citations omitted; emphasis added).

the letter.[69]  As a result of the delays, a state Supreme Court has held in the wake of *Jones v. Flowers* that seven notice, only by certified mail and without regard to whether the it was received, does not meet due process standards of being reasonably calculated to give notice adequate to terminate a property right.[70]

The District Court denied relief on this claim for two reasons.  First, it concluded that Ms. Cooley was not denied due process, since she received a hearing before her Section 8 assistance actually ended.  Second, it stated that *Jones v. Flowers* is limited to tax sale cases.

As to whether *Jones v. Flowers* is limited to tax sales, the case certainly focuses on tax sales, a source of recurring litigation.  But the holding ultimately concerns what due process requires in terms of notice, an issue that crosses over to many other areas of law.  And in drawing its conclusion, the Supreme Court relied on cases from other areas of law.  These included *Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306 (1950), which deals with the notice required to trust beneficiaries, *Dusenbery v. U.S.,* 534 U.S. 161 (2002), and *Robinson v. Hanrahan,* 409 U.S. 38 (1972), both of which deal with notice of a property seizure that occurred in conjunction with an arrest, *Tulsa Professional Collection*

---

[69] 547 U.S. at 235.

[70] *War Eagle Village Apartments v. Plummer*, 775 N.W.2d 714 (Iowa 2009)(holding that sending notice of an eviction proceeding seven days before the proceeding, only by certified mail and without any regard for whether the certified mail was picked up before the proceeding, was not reasonably calculated to provide adequate notice and so denied due process of law). *See also Lugo v. Dumpson*, 390 F. Supp. 379, 382 (S.D.N.Y. 1975)(holding that five days notice of the chance to appeal for a pretermination hearing was so short as to deny due process).

*Services, Inc. v. Pope*, 485 U.S. 478 (1988), regarding the notice required to cut off creditors' claims against an estate, and *Greene v. Lindsey*, 456 U.S. 444 (1982), as to the notice required to evict tenants from public housing.[71]

In 2011, the Fifth Circuit cited and followed at least three other circuits, in refusing to limit *Jones v. Flowers* to tax sale cases. *Echavarria v. Pitts*, 641 F.3d 92, 95 & n. 2 (5th Cir. 2011). There the Circuit held that *Jones v. Flowers* required the Department of Homeland Security to take additional, reasonable steps to notify bond obligors that their bond had been breached when the agency knew the initial attempt at notice had failed. The Fifth Circuit so held despite the fact "that an irreversible loss of a person's home (as in *Jones*) is a more significant deprivation than the loss of $1,500" bond at issue there.[72] So it was incorrect for the District Court to conclude that *Jones v. Flowers* is limited to tax sale cases.

The District Court's other reason for denying the due process claim was its conclusion that because Ms. Cooley received a hearing before her assistance was terminated, she received due process, regardless of the lack of notice.

This holding at first blush seems consistent with other areas of law, in which the availability of later process precludes a due process claim. *See e.g.*, *Parratt v. Taylor*,[73] (no due process claim for random and unauthorized deprivation, where post-deprivation procedures are available).

---

[71] 547 U.S. at 229.
[72] 641 F.3d at 95.
[73] 451 U.S. 527 (1981).

But here the Housing Authority is not claiming the deprivation is "random and unauthorized", but that it is the consequence of the Authority's policy, established by its Board President.  (Brief at 24.)  Where "established state procedure" denies due process, a claim is stated, regardless of later remedial procedures.[74]

This is reasonable enough.  Once the Housing Authority set a mandatory appointment, of which she had no notice, the later availability of a hearing is meaningless, given the Housing Authority's continued insistence on penalizing Ms. Cooley even though it knew she had not received notice of the re-examination appointment.

Cases have repeatedly held that the availability of later proceedings do not remedy a lack of notice, unless those proceedings set the affected party back to where they would have been if given notice.

For example, in *Peralta v. Heights Medical Center, Inc.*,[75] the Supreme Court held that where a party had not received notice of the suit, presenting a meritorious defense could not be required as a condition for lifting a default judgment, since the judgment debtor would have had other options for dealing with the suit if notified of the proceedings before judgment had been entered.

---

[74] *Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 435–436 (1982); see also *Zinermon v. Burch*, 494 U.S. 113, 136-138 (1990).

[75] 485 U.S. 80 (1988).

Similarly, in *Armstrong v. Manzo*,[76] the Court held it improper to heighten the requirement for an after-the-fact challenge to an adoption, where a parent had not received advance notice of the adoption proceedings.

As noted above, the burden on the Slidell Housing Authority in rescheduling is no higher after the appointment than before, given how close before the appointment this notice was mailed.[77]

Here, contrary to the results in *Peralta* and *Armstrong v. Manzo*, a higher hurdle has been imposed on Ms. Cooley than is imposed on those who receive advance notice. Those who receive advance notice also get the opportunity to reschedule their appointment if they contact the Housing Authority within three days of receiving the letter. But Ms. Cooley is denied both advance notice and the chance to reschedule, unless she meets a special hurdle (circumstances beyond her control) to overcome her lack of notice.

In *Flowers v. Jones* the Supreme Court specifically rejected claims that the lack of notice should not be held against the government because it was "the citizen's fault" that he lacked notice. The losing agency argued a number of grounds for finding Mr. Jones to be at fault and so not worthy of further notice, including that:

- Jones had violated his legal obligation to keep his address updated,

---

[76] 380 U.S. 545 (1965).
[77] *See supra* at 16-17.

- Jones had at least constructive notice that he had not paid his property taxes, and

- Jones should have made sure that the occupants of his property would alert him if his property was in jeopardy[78].

The Supreme Court refused to deny relief even though Jones contributed to his lack of notice.   This is in stark contrast to the SHA position, where the agency acknowledges Ms. Cooley lacked notice, but refuses to act on it because it was not due to circumstances beyond her control.[79]

In fact, Ms. Cooley's claim is stronger than that in *Jones v. Flowers*. The property holder in *Jones*, although he did not receive notice of the tax sale itself, should have known that property taxes had to be paid on the residence, and so had at least constructive notice that he was in arrears on taxes and needed to take protective action.  But Ms. Cooley's previous re-examination appointments had been in May, not April.  So from what she knew, without having received notice to the contrary, her return to Slidell on April 18 was in plenty of time for a re-examination appointment that would occur in May.

---

[78] 547 U.S.at 231-232.
[79] ROA 205, Rec. Exc. Tab 4, Exh. CC, p. 2; Appellant's Brief at 2, 9, 13, 14, 17-18, 23, 26.

C. **The District Court properly ruled that the allegations concerning overpaid assistance were not at issue, because they had not been discussed in the informal hearing decision.**

The Housing Authority opens its Statement of the Case and frames at least the second of its two issues presented for review as though this were a case about fraud by a program recipient.

In defense of its termination the Authority is raking up allegations about the client's alleged non-reporting or late reporting of circumstances. It raised more in the District Court, which were addressed by plaintiff's counsel and have not been briefed on appeal by SHA.[80] Now the Housing Authority alleges Ms. Cooley's failure to timely report September 2009 resumption of employment income until allegedly May 2010,[81] a $14 a week discrepancy in the amount of unemployment benefits budgeted in 2011, and the authority's having erroneously concluded in Septermber 2011 that Ms. Cooley's unemployment compensation would be ending.

Opposing counsel offers an unsigned document regarding Ms. Cooley's "annual" income, claiming it shows fraud on her part.[82] It shows the SHA's conclusions about Ms. Cooley's income. It does not show the questions asked and do not evidence the fraud elements of (1) *a false representation*, (2) in reference to a material fact, (3) *made with knowledge of its falsity*, (4) *and with intent to deceive*, (5) with action taken in reliance upon the representation. *Holly v.*

---

[80] *See* ROA 304.

[81] The date of Ms. Cooley's reporting was in dispute. See ROA 311 – 312, Cooley Affidavit ¶¶ 26-27; ROA 139-140.

[82] ROA 116, Rec. Exc. Tab 4, Exh. E.

*Housing Authority of New Orleans*, 684 F. Supp. 1363, 1368 (E.D. La 1988)(emphasis added)(citing *Nader v. Allegheny Airlines*, 626 F.2d 1031, 1036 (D.C.Cir.1980)).  Ms. Cooley explained that her job was uncertain in 2009 because she had suffered an injury and had to wait for a position that she could take under her continued restrictions.[83]  While counsel claims she was on three weeks leave, this ignores the fact that this was an extension of leave that had run from May 15 to August 31.[84]

But the termination under review was not based on these reporting issues. Ms. Cooley was terminated from the Section 8 program for missing an annual re-examination appointment, the only notice of which was sent by certified mail six days before the appointment, and that certified mail has been verified as not received until after the appointment.

The District Court correctly found that the issues concerning past late reporting did not provide a basis for affirming the Housing Authority's decision. As set out in its footnote 2:

> The [Housing Authority's informal hearing] decision letter did not discuss facts related to Cooley's failure to comply with Family Obligations 5 or 6. Rather, the letter has a conclusory statement that Cooley violated those Family Obligations. Therefore, SHA may not rely on Cooley's failure to comply with Family Obligations 5 or 6 as the basis for terminating Cooley's participation in the Voucher Program.[85]

---

[83] ROA 307 – 308, Cooley Affidavit ¶¶ 2-3.
[84] *Id.;* ROA 124, Rec. Exc. Tab 4, Exh. G.
[85] ROA 449, Rec. Exc. Tab 3, p. 5, n. 2.

(The referenced Obligations 5 & 6 are obligations to report any changes in income or household composition within 10 days.[86])

The District Court's refusal to affirm based on an issue that was not properly noticed, evidenced, and discussed in the hearing decision being reviewed is in accord with numerous other cases.

Federal regulations require that whenever a Public Housing Authority terminates a Section 8 participant from the program, it must issue a notice that, among other things must "Contain a brief statement of reasons for the decision."[87] This is in accord with due process requirements that when assistance that qualifies as a property interest is being terminated, a recipient must "have timely and adequate notice detailing the reasons for a proposed termination." *Goldberg v. Kelly*, 397 U.S. 254, 268 (1970).

The Fifth Circuit has specified that Public Housing Authority notices must: (1) do more than "merely parrot[] the broad language of the regulations," (2) provide a "statement of reasons" sufficient "to permit [an applicant] to defend [himself] against the truth of the housing authority's basis for rejecting him," and (3) "identify the evidentiary basis" for the PHA's allegations. *Billington v. Underwood*, 613 F.2d 91, 94 (5th Cir. 1980).[88]  Other cases, too, support the refusal

---

[86] *See* ROA 110, Rec. Exc. Tab 4, Exh. C.

[87] 24 C.F.R. § 982.555(c)(2)(i).

[88] Although *Billington* concerned a notice to applicants, its standard has regularly been applied in the termination context. *See Ramirez v. Housing Authority of the City of El Paso*, 158 F.3d 583, 1998 WL 648477 *5 (5th Cir. 1998)(unpublished)(accepting notice that was "adequate for [terminated § 8 participant] to prepare a meaningful defense"); *McCall v. Montgomery Housing*

to allow the Housing Authority to rely on this alternative ground, where it was not specified in the notice, evidenced at the hearing, or discussed in the informal hearing decision.[89]

The PHA must prove the basis for termination by a "preponderance of the evidence presented at the hearing."[90]  Therefore, a hearing decision cannot be supported by grounds not evidenced at the hearing.  *Gaston v. CHAC, Inc.*, 872 N.E. 2d 38, 45-46 (Ill. App. Ct. 2007)(reversing Section 8 termination where grounds alleged had not been evidenced before the hearing officer).  Yet here, no facts about late reporting were introduced at the hearing.[91]  But the SHA claims they were considered in making the hearing decision.  (Brief at 14 n. 6.)

In addition, as noted by the District Court, Ms. Cooley's hearing decision did not mention late reporting as an issue.  In *Goldberg v. Kelly*,[92] the Supreme Court held with respect to public assistance administrative hearings that "the decisionmaker's conclusion as to a recipient's eligibility must rest solely on the legal rules and evidence adduced at the hearing. …To demonstrate compliance with this elementary requirement, the decision maker should state the reasons for

---

*Authority*, 809 F.Supp.2d 1314, 1325 (M.D.Ala. 2011); *Young v. Maryville Housing Authority*, 2009 WL 2043891 *6 (E.D. Tenn. July 2, 2009); *Driver v. Housing Authority of Racine County*, 289 Wis.2d 727, 739 (Wis. App. 2006).

[89] *See Perkins-Bey v. Hous. Auth. of St. Louis County*, 2011 WL939292 *4 (E.D. Mo. Mar. 14, 2011) (preliminarily enjoining termination based in part on failure to include grounds in the notice).

[90] 24 C.F.R. § 982.555(e)(6).

[91] ROA 277, Plaintiff Statement of Uncontested Material Facts, #21 (not contested: ROA 400); ROA 376, Request for Admission # 10; ROA 311, Cooley Affidavit, ¶ 24.

[92] 397 U.S. 254 (1970).

his determination and indicate the evidence he relied on…"[93]

Governing regulations, too, require that "[t]he person who conducts the

hearing must issue a written decision, stating briefly the reasons for the decision."

24 C.F.R. § 982.555(e)(6). Commenting on this requirement, HUD has stated:

> The statement of decision required by the regulation must be
> truly informative as to the reasons for the decision. This would
> include a short statement of the elements of fact or law on
> which the decision is actually based. A bare and conclusory
> statement of the hearing decision, that does not let the
> participant know the basic reasons for the decision, will not
> satisfy the regulatory requirement.[94]

*See also Boykins v. Cmty. Dev. Corp. of Long Island*, 2011 WL 1059183 *3-4

(E.D.N.Y. Mar. 21, 2011) (holding that hearing officer's decision violated due

process because it did not explain factual basis supporting termination); *Costa v.

Fall River Hous. Auth.*, 453 Mass. 614, 630 (Mass. 2009) (finding Section 8

participant's rights violated because written decision did not clearly explain factual

basis for decision);.

Even if the issue of late reporting of income had been before the tribunal,

failure to report or incorrect reporting does not usually warrant termination of

---

[93] *Id.* at 271. *See also Clark v. Alexander*, 85 F.3d 146, 150 (4th Cir. 1996),
noting that *Goldberg* requires *"a decision, based solely on evidence adduced at the
hearing, in which the reasons for the decision are set forth."*

[94] 49 Fed. Reg. 12,215, 12,230 (Mar. 29, 1984). The HUD Federal Register
comments refer to the tenant-based Section 8 certificate program, which was in
effect prior to 1995. These regulations formed the basis for the current Voucher
termination regulations and therefore the comments remain applicable. *Compare*
24 C.F.R. § 882.216(b)(iv)(6)(v), set out in the notice at 49 Fed. Reg. 12,243, with
the almost identical current 24 C.F.R. § 982.555(e)(6).

assistance.  The HUD Housing Choice Voucher Program Guidebook *allows* termination if "the PHA paid too much subsidy on the family's behalf because of discrepancies in information furnished by the family *and if the PHA has sufficient evidence that the family intentionally misrepresented its circumstances.*"[95] Termination is generally used as the last remedy because a retroactive repayment plan can adequately remedy the breach.[96]  Even where the family is at fault, HUD guidance states that repayment should usually be sought.[97]  The Slidell Housing Authority Administrative plan similarly provides that "Retroactive rent is charged when the participant has failed to provide information within the required time period."[98]  But here the Housing Authority never sought repayment, though the key allegation was known to it since 2010.  And Ms. Cooley has been willing throughout the litigation to enter a repayment agreement.[99]

### Conclusion

As set out above, the Housing Authority's termination of Ms. Cooley's housing assistance for missing an appointment the Authority knew she lacked notice of, and refusal to reschedule, especially given its failure to comply with its

---

[95] ROA 367, HUD Housing Choice Voucher Program Guidebook (Apr. 2001) §22.6.

[96] ROA 365, HUD Housing Choice Voucher Program Guidebook (Apr. 2001) § 22.5 ("In cases where the error or omission is clearly the fault of the family, the family must repay the PHA within a reasonable period of time. If the amount owed is not repaid, the PHA may terminate the family's assistance.")

[97] *Id.*

[98] ROA 187, Rec. Exc. Exhibit V, p. 2.

[99] ROA 312, Cooley Affidavit, ¶ 29.

own policy requiring the appointment notice be sent earlier, was unreasonable and properly reversed as arbitrary and capricious.

Because the Authority knew its notice was ineffectual before taking adverse action, the termination also violated due process of law.

The District Court's judgment reinstating Ms. Cooley should be affirmed.

Respectfully submitted,

SOUTHEAST LOUISIANA LEGAL SERVICES

BY: ___S/ David H. Williams_____
DAVID H. WILLIAMS, Louisiana Bar No. 17867
1010 Common Street, Suite 1400A
New Orleans, LA 70112
Phone: (504) 529-1063

### Certificate of Service

I certify that I served this Brief this 28th day of October, 2013, by email and by electronic filing and the court's Notice of Docket Activity, on:

Joanne Rinardo (#24201)
Keith J. Bergeron (#25574)
jrinardo@dkslaw.com
kbergeron@dkslaw.com
DEUTSCH, KERRIGAN & STILES, L.L.P.
755 Magazine Street
New Orleans, LA 70130

BY:  S/ David H. Williams

### Certificate of Compliance with Rule 32(A)
Certificate of Compliance with Type-Volume Limitation,
Typeface Requirements, and Type Style Requirements

1. This brief complies with the type-volume limitation of FED. R. APP. P. 32(a)(7)(B) because: this brief contains 7,107 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(a)(7)(B)(iii).

2. This brief complies with the typeface requirements of FED. R. APP. P. 32(a)(5) and the type style requirements of FED. R. APP. P. 32(a)(6) because: this brief has been prepared in a proportionally spaced typeface using Microsoft Word in 14 point Times New Roman.

S/ David H. Williams
David H. Williams
Attorney for Appellee Robin Cooley
Dated: October 28, 2013